NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-13927

CAROLINE PINEAU & others[1]  vs.  ATTORNEY GENERAL & another.[2]


Suffolk.     May 4, 2026. – June 12, 2026.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.


Initiative.  Constitutional Law, Initiative petition.  Attorney General.  Marijuana, Recreational, Medical.



Civil action commenced in the Supreme Judicial Court for the county of Suffolk on April 1, 2026.

The case was reported by Dewar, J.


Adam D. Fine (Timothy D. Swain also present) for the plaintiffs.
Aaron Macris, Assistant Attorney General (Anne Sterman, Assistant Attorney General, also present) for the defendants.
Patrick Strawbridge, for Coalition for a Healthy Massachusetts, amicus curiae, submitted a brief.
Christine Baily, for Massachusetts Cannabis Coalition, amicus curiae, submitted a brief.

---

[1] Gyasi Sellers, Boey Bertold, and Lisa Mauriello.

[2] Secretary of the Commonwealth.

DEWAR, J.  The plaintiffs, four Massachusetts voters, challenge the Attorney General's certification of an initiative petition proposing "An Act to Restore a Sensible Marijuana Policy" for inclusion on the Statewide ballot at the November 2026 election.  The plaintiffs contend that this initiative petition violates two requirements under art. 48 of the Amendments to the Massachusetts Constitution:  that the petition contain only subjects "which are related or which are mutually dependent," art. 48, The Initiative, II, § 3, as amended by art. 74 of the Amendments, and that it not be "inconsistent with . . . [t]he right to receive compensation for private property appropriated to public use," art. 48, The Initiative, II, § 2. The plaintiffs also claim that the Attorney General's summary of the petition is not "fair" as required by art. 48, The Initiative, II, § 3, as amended by art. 74, because the summary does not mention a number of the respects in which the petition, if approved, would change existing law.  We conclude that the Attorney General did not err in certifying the petition on either of the claimed grounds, and that her summary of the petition is fair.  We therefore remand the case to the county court for entry of a judgment declaring that the Attorney

General's certification and summary comply with the requirements of art. 48.[3]

Background. 1. Statutory framework. Because the initiative petition seeks to achieve its purposes in part by repealing some but not all of the Commonwealth's existing laws regulating marijuana, we begin with an overview of those laws. In 2012, Massachusetts voters approved an initiative petition legalizing the possession, use, and sale of medically prescribed marijuana. See St. 2012, c. 369, §§ 1 et seq. In 2016, the voters approved an initiative petition legalizing marijuana for recreational use and establishing a regulatory framework for its taxation, production, and sale. See St. 2016, c. 334, §§ 1 et seq. In particular, the voters enacted G. L. c. 94G, governing the recreational use and distribution of marijuana, see St. 2016, c. 334, § 5, and also G. L. c. 64N, governing the taxation of nonmedical marijuana, see St. 2016, c. 334, § 4. Among other provisions, the newly enacted chapter 94G created the Cannabis Control Commission (CCC or commission). See St. 2016, c. 334, § 3.

In the decade since the legalization of recreational marijuana, the Legislature has amended these laws in a number of

_____

[3] We acknowledge the amicus briefs submitted by the Coalition for a Healthy Massachusetts and the Massachusetts Cannabis Commission.

respects.  Most relevant here, in 2017, the Legislature amended chapter 94G to require host community agreements between local municipal authorities and marijuana establishments.  See St. 2017, c. 55, § 25, inserting G. L. c. 94G, § 3 [d].  And in 2022, the Legislature further amended chapter 94G to establish the Cannabis Social Equity Trust Fund (trust), see St. 2022, c. 180, § 18, inserting G. L. c. 94G, § 14A, and the Commonwealth's Cannabis Social Equity Program (social equity program), see St. 2022, c. 180, § 20, inserting G. L. c. 94G, § 22.  The trust is funded by marijuana licensing fees, taxes on nonmedical marijuana, civil marijuana penalties, and private sources, see G. L. c. 94G, § 14, with the purpose of encouraging "the full participation in the [C]ommonwealth's regulated marijuana industry of entrepreneurs from communities that have been disproportionately harmed by marijuana prohibition and enforcement," G. L. c. 94G, § 14A (a).  The social equity program offers "(i) technical assistance and training; and (ii) guidance on how to access funds available through the [trust] . . . to individuals certified by the commission as economic empowerment priority applicants and that meet other criteria determined by the commission."  G. L. c. 94G, § 22.[4]

---

[4] On April 19, 2026, the Legislature enacted a number of additional amendments that, among other changes, restructured the CCC, see St. 2026, c. 65, § 1, inserting G. L. c. 6, § 223; St. 2026, c. 65, § 2, repealing G. L. c. 10, § 76, and increased

2.  <u>Initiative Petition 25-10</u>.  In 2025, a group of Massachusetts voters submitted Initiative Petition 25-10, proposing a regulatory scheme for marijuana that would resemble, albeit with modifications, the regime in place prior to voters' approval of the 2016 initiative petition legalizing recreational marijuana.  The petition would repeal chapters 94G and 64N, which currently govern recreational marijuana and its taxation, but would not repeal the chapter governing medical marijuana, G. L. c. 94I.

The petition would not criminalize all possession of marijuana that is not medically prescribed, however.  Persons age twenty-one or older would not be subject to any criminal or civil penalty for possessing one ounce or less of marijuana, and they would incur only a civil penalty of a one hundred dollar fine and forfeiture of the marijuana for possession of more than one, and up to two, ounces.  A person under twenty-one years old possessing two ounces or less of marijuana also would be subject to a one hundred dollar civil fine and forfeiture of the

---

the amount of marijuana a person may possess without incurring criminal liability, see G. L. c. 94C, §§ 32L, 32M, as amended though St. 2026, c. 65, §§ 7, 8.  The parties brought these amendments to this court's attention -- noting that certain provisions cited in their briefs had been modified -- but they have not contended that the recent amendments affect the merits of the legal issues before us.  Except where noted, our statutory citations are to the current General Laws.

marijuana, as well as required completion of a drug awareness program, with parental notification for offenders under the age of eighteen and additional penalties for failure to complete the program.

Among other provisions, the proposed measure also would require the CCC to provide expedited processes for licensed recreational marijuana businesses to obtain medical marijuana licensure or sell their existing recreational marijuana supplies to medical marijuana licensees. And, as part of the wholesale repeal of chapter 94G, the measure would eliminate, among other provisions in that chapter, those provisions creating the trust and social equity program, see G. L. c. 94G, §§ 22, 14, 14A; requiring host community agreements, see G. L. c. 94G, § 3 (d); and prohibiting, for persons ages twenty-one and older, criminal liability or other sanctions for the possession or sale of marijuana accessories, see G. L. c. 94G, § 8.

On September 3, 2025, the Attorney General certified that the petition was appropriate for submission to the people under art. 48. She also prepared a summary of the petition to appear on the ballot and on forms used to gather registered voters' signatures in support of the petition. On April 1, 2026, the plaintiffs filed in the county court the instant complaint for declaratory and injunctive relief against the Attorney General and Secretary of the Commonwealth, claiming that the Attorney

General erred in certifying the petition because it did not meet the requirements of art. 48 and that her summary of the petition was not fair. A single justice reserved and reported the case to the full court.

Discussion. "Before an initiative petition can be presented to the Legislature and then to the voters, the Attorney General must certify that it meets the requirements of art. 48." El Koussa v. Attorney Gen., 489 Mass. 823, 827 (2022), citing art. 48, The Initiative, II, § 3, as amended by art. 74. We review de novo the Attorney General's decision to certify a petition. Abdow v. Attorney Gen., 468 Mass. 478, 487 (2014). "In conducting our review, we acknowledge the firmly established principle that art. 48 is to be construed to support the people's prerogative to initiate and adopt laws" (quotation and citation omitted). Id. We discuss in turn each of the plaintiffs' two arguments that the Attorney General erred in certifying Initiative Petition 25-10 and then address their argument that her summary was not fair.

1. Relatedness. "Article 48, The Initiative, II, § 3, as amended by art. 74, requires the Attorney General to certify that a proposed measure 'contains only subjects . . . which are related or which are mutually dependent' before the measure can be placed on the ballot." Weiner v. Attorney Gen., 484 Mass. 687, 691 (2020). The plaintiffs argue that the petition

violates the relatedness requirement because it concerns both recreational and medical marijuana, which entail "distinct and independent policy questions." They also contend that the petition contains various other subjects unrelated to its purpose, including through its provisions eliminating the trust and social equity program, newly imposing a mandatory drug awareness program on marijuana offenders under the age of twenty-one, eliminating the current requirement that marijuana businesses enter into host community agreements, and eliminating statutory protection for possession of marijuana accessories.

"We have said that the related subjects requirement is met where one can identify a common purpose to which each subject of an initiative petition can reasonably be said to be germane" (citation and quotation omitted). Weiner, 484 Mass. at 691. "We have not construed this requirement narrowly nor demanded that popular initiatives be drafted with strict internal consistency." Mazzone v. Attorney Gen., 432 Mass. 515, 528-529 (2000). A stringent interpretation of the requirement would "risk limiting initiative petitions to a single subject, a requirement rejected by the constitutional convention that approved art. 48." Weiner, supra. However, "[a]t some high level of abstraction, any two laws may be said to share a 'common purpose.'" Carney v. Attorney Gen., 447 Mass. 218, 226 (2006), S.C., 451 Mass. 803 (2008). Relatedness therefore

"cannot be defined so broadly that it allows the inclusion in a single petition of two or more subjects that have only a marginal relationship to one another, which might confuse or mislead voters, or which could place them in the untenable position of casting a single vote on two or more dissimilar subjects."  Abdow, 468 Mass. at 499.

Balancing these considerations, we ask two questions when deciding whether a petition meets the relatedness requirement in art. 48.  First, we ask whether "the similarities of an initiative's provisions dominate what each segment provides separately so that the petition is sufficiently coherent to be voted on 'yes' or 'no' by the voters" (citation omitted).  Hensley v. Attorney Gen., 474 Mass. 651, 658 (2016).  Second, we ask whether the petition "express[es] an operational relatedness among its substantive parts that would permit a reasonable voter to affirm or reject the entire petition as a unified statement of public policy" (citation omitted).  Id.

The stated purpose of the petition here "is to modify the criteria for the legal possession, distribution, and use of marijuana by:  (a) continuing the medical use of marijuana program; (b) ensuring that the simple possession of 1 ounce or less of marijuana by those 21 and over is not punishable by civil or criminal penalties, and that possession of over 1 ounce to no more than 2 ounces of marijuana is punishable only by a

civil penalty; and (c) repealing Chapters 94G and 64N of the General Laws which govern the possession, use, distribution, cultivation, and taxation of marijuana not medically prescribed."  The Attorney General argues that the petition's various parts all relate to the common purpose of restricting the use of recreational marijuana through a new integrated scheme for marijuana regulation.  We agree and are not persuaded by the plaintiffs' arguments to the contrary.

To begin, the petition does not violate the relatedness requirement on the ground that it concerns both recreational and medical marijuana.  The plaintiffs emphasize that, notwithstanding the petition's stated purpose to "continu[e] the medical use of marijuana program," the petition's repeal of chapter 94G would effect certain changes in the regulation of medical marijuana (the details of which we reserve for our discussion of the plaintiffs' other relatedness arguments).  The petition does not repeal chapter 94I, however, and thus indeed largely would "continu[e]" the existing laws governing medical marijuana.  Cf. Mazzone, 432 Mass. at 528-529 (art. 48's relatedness requirement does not require "strict internal consistency").  And the petition's limited effects on the regulation of medical marijuana as part of its over-all scheme to reinstate greater restrictions on recreational marijuana do not deprive the petition of this common purpose.  See Hensley,

474 Mass. at 659, quoting Albano v. Attorney Gen., 437 Mass. 156, 161 (2002) (petition "does not fail the relatedness requirement just because it affects more than one statute, as long as [its] provisions . . . are related by a common purpose"). We rejected a similar challenge to the 2016 initiative petition legalizing recreational marijuana, which, we held, did not contain unrelated subjects despite its effects on some aspects of the preexisting medical marijuana laws. See Hensley, supra at 658-659. Rather, we explained, the proposed law's impact on medical marijuana "[was] simply one piece of the proposed integrated scheme." Id. at 659. So too here.

The other aspects of the petition highlighted by the plaintiffs are not unrelated to the petition's common purpose. The elimination of the trust, social equity program, and mandatory host community agreements all bear an operational relationship to the petition's common purpose, see Hensley, 474 Mass. at 658, because they "anticipate[] and address[] . . . potential consequence[s]" of repealing the current regulatory regime, Weiner, 484 Mass. at 692, quoting Oberlies v. Attorney Gen., 479 Mass. 823, 832 (2018). By ending the legal sale and taxation of recreational marijuana under chapters 94G and 64N, the petition would eliminate the tax revenue funding for the trust and social equity program, see G. L. c. 94G, §§ 14, 14A, and also would restrict, to medical marijuana only, the industry

in which the social equity program aims to encourage participation, see G. L. c. 94G, § 22. And abolishing the legal recreational marijuana industry would greatly reduce the occasion for mandatory host community agreements under G. L. c. 94G, § 3 (d).

That the petition's proponents chose to eliminate these aspects of the current regulatory regime -- rather than reducing their scope to solely medical marijuana -- does not "affect the coherence of the proposal as a unified statement of public policy that is a proper subject for a 'yes' or 'no' vote." Hensley, 474 Mass. at 659. See Massachusetts Teachers Ass'n v. Secretary of the Commonwealth, 384 Mass. 209, 220 (1981) ("It is not for the courts to say that logically and consistently other matters might have been included or that particular subjects might have been dealt with differently"). As the plaintiffs argue, there indeed may be voters who favor restricting recreational marijuana but do not favor eliminating these other aspects of the current regulatory regime in relation to medical marijuana. Nonetheless, the proposed measure does not place voters in "the untenable position of casting a single vote on two or more dissimilar subjects" (emphasis added). Abdow, 468 Mass. at 499.[5]

_____

[5] For similar reasons, we reject the plaintiffs' additional argument that the petition violates the relatedness requirement

Similarly, the petition's greater restrictions on marijuana accessories and enhanced civil penalties for possession of marijuana by persons under twenty-one years old are "piece[s] of the proposed integrated scheme" to restrict recreational marijuana.  Hensley, 474 Mass. at 659.  The proposed measure would repeal the provision in chapter 94G prohibiting penalties for the possession or sale of marijuana accessories by persons twenty-one years of age or older, see G. L. c. 94G, § 8, although possession and use of marijuana accessories sold by medical marijuana establishments to those prescribed medical marijuana would remain legal, see G. L. c. 94I, §§ 1, 2 (b) (2).  The measure also would require persons under twenty-one years old who possess two ounces or less of marijuana to complete a

---

because the repeal of chapter 94G would result in the repeal of various public safety measures related to marijuana -- such as the ban on open containers of marijuana in motor vehicles under G. L. c. 94G, § 13 (d), and the ban on public consumption of marijuana under G. L. c. 94G, § 13 (c) -- and thereby undermine rather than further the petition's purpose.  The Attorney General points out that operating a motor vehicle while under the influence of marijuana would remain unlawful under G. L. c. 90, § 24 (1) (a) (1); that the public consumption ban has never applied to medically prescribed marijuana, see G. L. c. 94G, § 13 (c); and that section 4 of the proposed law expressly preserves local authority to impose additional penalties for public consumption by ordinance or bylaw.  The petition thus would leave in place a number of public safety measures related to marijuana as part of its "proposed integrated scheme," Hensley, 474 Mass. at 659, and does not require voters to vote on dissimilar subjects, see Abdow, 468 Mass. at 499.

drug awareness program.[6]  Both of these provisions effect the petition's purpose of restricting recreational marijuana and thus are not unrelated.  See Weiner, 484 Mass. at 694 (enforcement provisions "[went] to the scope of the measure" without "vitiat[ing] [its] relatedness . . . as a whole").

For these reasons, the Attorney General was correct to certify that the petition contains only subjects that are related or mutually dependent as required by art. 48.

2.  Right to receive compensation for private property appropriated to public use.  The plaintiffs also argue that the Attorney General erred in certifying the petition because it is "inconsistent with . . . [t]he right to receive compensation for

---

[6] The plaintiffs suggest that this aspect of the proposed measure would "change the statutory age of a youth[ful] offender for purposes of delinquency proceedings from eighteen to twenty-one."  They refer to section 5 of the proposed measure, which would amend G. L. c. 94C, § 32M, to provide that "[a]n offender under the age of [21] is required to complete a drug awareness program within one year of the offense for possession of 2 ounces or less of marihuana," and that "the failure of such an offender to complete such a program may be a basis for delinquency proceedings for persons under the age of [21] at the time of their offense."  Cf. G. L. c. 119, §§ 21, 58 (defining "child" subject to delinquency proceedings as "person under the age of 18").  The Attorney General's brief does not respond to this aspect of the plaintiffs' argument.  However, "[w]e need not resolve, at this juncture, any conflicts or inconsistencies between differing statutory schemes if the proposed act were to pass," where "[t]he sole question before us is whether the subjects included in the proposed act are related for art. 48 purposes."  Hensley, 474 Mass. at 659 n.13.  For the reasons given above, we conclude that they are.

private property appropriated to public use." Art. 48, The Initiative, II, § 2. They contend that the elimination of the trust and social equity program would amount to a taking without compensation of qualified social equity participants' property rights to grant funding and technical assistance and training pursuant to G. L. c. 94G, § 22.

Important to our consideration of this issue is the limited array of facts the Attorney General may consider when deciding whether to certify an initiative petition under art. 48. The Attorney General's factual examination is "limited to matters implicit in the language of the petition and to matters of which the Attorney General may properly take official notice." Yankee Atomic Elec. Co. v. Secretary of the Commonwealth, 403 Mass. 203, 205 (1988) (Yankee II). "Factual matters which are 'indisputably true' are subject to judicial notice; these include [m]atters of common knowledge or observation within the community . . . as well as additional items of which an agency official may take notice due to the agency's established familiarity with and expertise regarding a particular subject area" (citation and quotation omitted). Yankee Atomic Elec. Co. v. Secretary of the Commonwealth, 402 Mass. 750, 759 n.7 (1988). The Attorney General is neither required nor allowed to engage in "lengthy factual determinations" exceeding this "limited examination." Yankee II, supra at 209. Accordingly, the

question here is whether the limited facts the Attorney General may consider "compel a conclusion that this petition proposes legislation which would bring about a taking of private property without compensation."  Id. at 208.  This approach "is consistent with the firmly established principle that art. 48 is to be construed to support the people's prerogative to initiate and adopt laws."  Id. at 211.

Under this standard, the plaintiffs fall short of demonstrating error by the Attorney General.  Pointing out that social equity program participants must sign contracts with the Commonwealth to obtain funds from the trust, see 400 Code Mass. Regs. § 8.05(3) (2024), the plaintiffs argue that, under art. 10 of the Massachusetts Declaration of Rights, valid contracts between the State and private individuals create property rights, and they assert that the proposed measure will deprive participants of their property rights in their social equity program contracts.  However, the plaintiffs do not point to any facts cognizable by the Attorney General (or, indeed, any facts at all) showing that any existing contract would be affected by the proposed measure, which by its own terms would not take effect until January 1, 2028.  Cf. Dimino v. Secretary of the Commonwealth, 427 Mass. 704, 708-710 (1998) (petition abolishing toll collections improperly certified where bondholders undisputedly held property right protected by art. 10 to toll

collection revenue pursuant to preexisting trust agreements). The existence of this "undetermined factual issue[]" alone suffices to support the Attorney General's "reasonable" conclusion to certify the petition as "not necessarily effect[ing] a . . . taking." Yankee II, 403 Mass. at 210.

3. Summary. Finally, the plaintiffs claim that the Attorney General's summary of the petition is not "fair" under art. 48. They chiefly argue that the summary is unfair for its failure to mention that, as discussed above, the repeal of chapter 94G would eliminate that chapter's provisions creating the trust and social equity program, requiring host community agreements, and imposing various public safety measures, see note 5, supra.

The Attorney General is required under art. 48 to provide a "fair, concise summary" of a certified initiative petition. Art. 48, The Initiative, II, § 3, as amended by art. 74. To be "fair," a summary "must not be partisan, colored, argumentative, or in any way one sided, and it must be complete enough to serve the purpose of giving the voter who is asked to sign a petition or who is present in a polling booth a fair and intelligent conception of the main outlines of the measure." Abdow, 468 Mass. at 505, quoting Sears v. Treasurer & Receiver Gen., 327 Mass. 310, 324 (1951). "[D]etails may be omitted or in many instances covered by broad generalizations, but mention must be

made of at least the main features of the measure." Sears,
supra. Article 48 thus requires the Attorney General to "weigh
the need for sufficient completeness against the requirement of
conciseness." Anderson v. Attorney Gen., 490 Mass. 26, 31
(2022). "Given the balancing act required, as well as the fact
that the Attorney General is a constitutional officer with an
assigned constitutional duty, we give deference to the Attorney
General's exercise of discretion in crafting a summary, and will
not substitute our judgment for that of the Attorney General's
over a matter of degree" (quotations and citations omitted).
Id. at 31-32.

The Attorney General's summary of this petition gives the
required "fair and intelligent conception of the main outlines
of the measure." Abdow, 468 Mass. at 505, quoting Sears, 327
Mass. at 324. It states that "[t]he proposed law would change
the type and amount of marijuana that may legally be possessed
in Massachusetts by repealing the laws that legalize, regulate,
and tax the retail sale of adult recreational use marijuana in
Massachusetts." It then describes the proposed law's provisions
permitting persons age twenty-one or older to possess one ounce
or less of marijuana; setting civil penalties for possession of
up to two ounces of marijuana; and allowing existing licensed
recreational marijuana businesses to apply for licensure as

medical marijuana dispensaries or sell their remaining products

to such dispensaries.[7]

Although, as the plaintiffs point out, the summary omits

mention of a number of the consequences of repealing

---

[7] The summary states in full:

"The proposed law would change the type and amount of marijuana that may legally be possessed in Massachusetts by repealing the laws that legalize, regulate, and tax the retail sale of adult recreational use marijuana in Massachusetts.  The proposed law would also permit persons 21 years of age and older to possess 1 ounce or less of marijuana including no more than 5 grams in the form of concentrate, and to gift or transfer to another person 21 years of age and older 1 ounce or less of marijuana including no more than 5 grams in the form of concentrate. The proposed law would also impose a civil penalty of $100 and forfeiture of the marijuana for the possession of marijuana between the weight of 1 and 2 ounces.

"For persons 21 years of age and younger, the proposed law would make the possession of 2 ounces or less of marijuana a civil infraction subject to a $100 fine, forfeiture of the marijuana, completion of a drug awareness program and community service, and notification to their parents or legal guardian of the offense and penalties.

"The proposed law would allow currently licensed adult recreational marijuana businesses to apply on an expedited basis to become a licensed medical marijuana dispensary and to sell their remaining inventory of adult recreational marijuana to medical marijuana dispensaries.  The proposed law would retain the Cannabis Control Commission but modify its authority so it would regulate only the medical marijuana market.

"The proposed law states that, if any of its parts were declared invalid, the other parts would stay in effect.

"The proposed law would take effect on January 1, 2028."

chapter 94G, "[a]ll the Constitution demands is a summary." Mazzone, 432 Mass. at 532. Moreover, the required summary is "of the proposed measure and not of the existing law." Sears, 327 Mass. at 325-326. The Attorney General thus is not required to "make[] detailed references to the statut[es] . . . being displaced" by a proposed law. El Koussa v. Attorney Gen., 494 Mass. 269, 279 (2024).[8] In accord with these principles, the summary informs voters that the petition would "repeal[] the laws that legalize, regulate, and tax" retail sales of recreational marijuana. While a "broad generalization[]," Sears, supra at 324, this description encompasses the repeal of provisions defining the scope of marijuana legalization through public safety exceptions, regulating the location of retail sales and who participates in the retail market, and making use of the collected tax revenue. The summary thus provides voters with "the main outlines of the measure." Abdow, 468 Mass. at 505, quoting Sears, supra.

---

[8] For these reasons, we are unpersuaded by the plaintiffs' additional argument that the summary is defective because it omits mention that some of the proposed civil penalties for possession of certain amounts of marijuana do not differ from existing law. The wisdom of omitting such minor details from the summary of an initiative petition is evident here, where, following certification of this petition, the Legislature made a host of amendments to the existing statutes. See note 4, supra.

Furthermore, "the summary is not the only source of information for voters." Hensley, 474 Mass. at 665. The Secretary of the Commonwealth prepares and sends to each registered voter an Information for Voters guide containing "for" and "against" statements prepared by the petition's supporters and opponents. Id. at 660, 665. Additionally, "in light of the controversy both here and in other States surrounding the legalization of marijuana, [voters] will have the benefit of what will surely be a spirited public debate on the petition generally." Id. at 665. Of course, "[t]he availability of other information does not relieve the Attorney General of her duty to prepare a constitutionally adequate summary, but it does give us confidence that the electorate will likely understand" the scope of the petition. Id.

Conclusion. We remand the case to the county court for entry of a judgment declaring that the Attorney General's certification and summary of Initiative Petition 25-10 comply with art. 48.

So ordered.